## MIGUEL, DEMANDANTE Y APELANTE, *v.* BENEDICTO, TESORERO DE PUERTO RICO, DEMANDADO Y APELADO

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección Primera, en un procedimiento sobre *injunction*.

No. 2133.—Resuelto en julio 15, 1920.

ACCIONES CONTRA EL PUEBLO DE PUERTO RICO—BASE PARA DETERMINAR CUÁNDO UNA ACCIÓN ES CONTRA UN FUNCIONARIO PÚBLICO O CONTRA EL ESTADO.—El hecho capital para determinar si una acción contra un funcionario público es una acción contra el Estado, depende no del carácter del cargo del demandado, sino de la naturaleza del pleito o del remedio solicitado.

CONSENTIMIENTO DE EL PUEBLO DE PUERTO RICO PARA SER DEMANDADO—INJUNCTION.—Una demanda de *injunction* dirigida contra el Tesorero de Puerto Rico para que se abstenga de pagar el precio de compra de ciertos terrenos verificada por el Comisionado de Sanidad de Puerto Rico, para instalar un sanatorio de tuberculosos es realmente una acción contra El Pueblo de Puerto Rico, cuyo consentimiento previo es necesario para el ejercicio de dicha acción.

DEFECTO DE PARTES DEMANDADAS.—En una demanda de *injunction* como la expresada no sólo es parte interesada El Pueblo de Puerto Rico, comprador de los terrenos, sino también el vendedor, pues a éste tiene que afectar la sentencia que recaiga.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. M. Guerra, D. F. Kelley* e *I. Soldevila.*

Abogados del apelado: *Hon. Attorney General* y *R. R. Rivera Zayas.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

La presente es una apelación contra orden de la Corte de Distrito de San Juan, Sección Primera, declarando sin lugar una petición de *injunction* de Camilo Miguel para que se ordene al Tesorero de Puerto Rico se abstenga de efectuar el pago de $10,000 a Harry S. Hubbard, Emilia Chabert o Jesse Hubbard, como precio de la compra de cierta finca rústica para Hospital de Tuberculosos.

La parte demandada, o sea el Tesorero de Puerto Rico hizo comparecencia especial ante dicha corte para impugnar su jurisdicción por tratarse en realidad de una acción contra El Pueblo de Puerto Rico, el cual no había prestado su consentimiento para ser demandado, y además excepcionó la demanda por el mismo fundamento, por falta de capacidad del demandante para demandar, por defecto de partes demandadas y por no aducir la demanda hechos suficientes para determinar una causa de acción.

La corte por resolución de 9 de octubre de 1919 declaró sin lugar la petición de *injunction* y anuló la orden restrictiva dirigida al Tesorero de Puerto Rico en 6 de septiembre anterior, habiendo llegado en su opinión a la siguiente conclusión:

"La corte no tiene jurisdicción en este caso, que sustancial y lógicamente es contra El Pueblo de Puerto Rico, es decir, una acción *'against the sovereign'* y en el que El Pueblo de Puerto Rico no ha consentido en ser demandado."

Y luego agrega:

"Resuelta esta excepción sería superfluo resolver las otras propuestas. Puede no obstante decir la corte que realmente hay defecto de partes demandadas porque en este concepto han debido figurar en el caso tanto El Pueblo de Puerto Rico como los vende-

dores de la finca, y asimismo, en la petición de *injunction* faltan alegaciones de hecho esenciales en cuanto a la extravagancia, ilegalidad o irregularidad del contrato o del pago."

No hay duda. alguna acerca de que El Pueblo de Puerto Rico no puede ser demandado sin su consentimiento, pues ya en el caso de *El Pueblo de Puerto Rico* v. *Rosaly y Castillo,* 227 U. S. 270, se resolvió que "no está sujeto a controversia pues a menos que exista excepción, el gobierno establecido por la Ley Orgánica en Puerto Rico es de tal naturaleza que está comprendido dentro de la regla general que exime a un gobierno soberano en sus facultades de ser demandado sin su consentimiento."

El hecho capital para determinar si una acción contra un funcionario público es una acción contra el estado, depende no del carácter del cargo del demandado, sino de la naturaleza del pleito o del remedio solicitado. 44 L. R. A. (N. S.) 191 (nota).

Para determinar la naturaleza del pleito que se establece y el carácter del remedio solicitado, examinemos las alegaciones de la demanda.

En la demanda alega el demandante que en los meses de enero o febrero de 1918 el Comisionado de Sanidad de Puerto Rico, Alejandro Ruiz Soler, celebró un supuesto contrato de compraventa con Harry S. Hubbard y su esposa Emilia Chabert, a virtud del cual dicho Comisionado de Sanidad se comprometía a comprar cierta parcela de terreno de unas 35 cuerdas más o menos, situada en el kilómetro 3 de la carretera que de Río Piedras conduce a Carolina, con el fin de instalar allí un hospital o sanatorio de tuberculosos; que con posterioridad a la fecha del contrato el Comisionado de Sanidad recibió de don Pedro Arzuaga, como donativo, una finca de cien cuerdas de terreno con el expresado fin, en la cual ha establecido el Departamento de Sanidad de Puerto Rico un importante Sanatorio de Tuberculosos, suficiente para atender a todas las necesidades de la isla, habiendo manifestado con tal motivo el Departamento de Sanidad por me-

dio de cartas suscritas por el Comisionado Ruiz Soler ser innecesaria la finca de 35 cuerdas para el fin indicado; que el precio estipulado para la compra de la finca de 35 cuerdas era de $10,000, precio muy excesivo y superior a su valor real y efectivo pues la finca tanto en la fecha de la celebración del supuesto contrato de compraventa como actualmente no vale más de $5,000; que a pesar de no necesitar ya el Departamento de Sanidad la finca de 35 cuerdas, el demandado, Tesorero de Puerto Rico, se dispone a extender un cheque por la cantidad de $10,000 en pago de dicho inmueble; que para tal pago o erogación no se ha hecho antes por medio de ley la asignación correspondiente, ya que las asignaciones aprobadas con el fin de adquirir terrenos para la erección del Hospital de Tuberculosos son anticonstitucionales y aunque no lo fueran han sido agotadas casi totalmente, y no existiendo en ley alguna la asignación debida que autorice dicha erogación, el Comisionado de Sanidad ha hecho en su presupuesto de gastos una o varias transferencias de fondos por la suma de $9,000 aproximadamente, de una manera ilegal y en contravención abierta con las leyes generales del país; y que la adquisición de la finca de 35 cuerdas además de ser innecesaria para el Departamento de Sanidad y para cualquier otro departamento ejecutivo de Puerto Rico, la compra de la misma sería y es irregular, extravagante, excesiva y lesiva de los derechos del peticionario en su carácter de contribuyente.

Las anteriores alegaciones, que debemos aceptar como ciertas en cuanto contienen hechos, pero no en cuanto envuelven conclusiones legales, muestran que el Comisionado de Sanidad de Puerto Rico celebró un contrato de compraventa de terrenos para la instalación de un Sanatorio de Tuberculosos, por precio superior a su valor real y efectivo y que esa adquisición había llegado a ser innecesaria para los fines a que se destinaba a virtud de donativo de otros terrenos en que se ha establecido dicho sanatorio. No se ha hecho alegación alguna tendente a demostrar que tal con-

trato fué supuesto, ni tampoco que el Comisionado de Sanidad careciera de facultad para elegir sitio adecuado y comprar dicho sitio para El Pueblo de Puerto Rico. Pero dicha alegación hubiera sido insostenible, teniendo en cuenta la sección 19 de la ley de 2 de marzo de 1917 estableciendo un gobierno civil para Puerto Rico, conocida por Ley Jones, y las Leyes No. 71 y No. 89 aprobadas respectivamente en 6 y 7 de diciembre de 1917.

La sección 19 de la Ley Jones prescribe que "el Comisionado de Sanidad tendrá a su cargo generalmente todos los asuntos relacionados con la salud, sanidad y beneficencia públicas, excepto aquellos que se relacionen con el servicio de cuarentena marítima y desempeñará las demás obligaciones que se le asignaren por la ley." Y las Leyes No. 71 y 89 a que hemos hecho referencia presupuestan, la primera, la suma de $20,000, y $40,000 la segunda "para asistencia de pacientes tuberculosos incluyendo compra y reparación de equipo, construcción y reparación de edificios y aseguro de equipo y edificios, propiedad de El Pueblo de Puerto Rico y utilizados como sanatorio, e incluyendo además la compra de los terrenos necesarios, pago de personal y gastos de transporte de pacientes y otros gastos."

Tenemos, pues, que el contrato de que se trata se celebró por Ruiz Soler en su capacidad oficial de Comisionado de Sanidad con Harry S. Hubbard y su esposa Emilia Chabert, no teniendo Ruiz Soler personalmente interés alguno en el contrato, sino El Pueblo de Puerto Rico.

La acción de *injunction* ejercitada tiende a impedir que se lleve a efecto por una de las partes contratantes, o sea por El Pueblo de Puerto Rico, el pago del precio del terreno, por más que dicha acción se dirija contra el Tesorero de Puerto Rico, pues éste al verificar el pago no había de proceder como parte en el contrato, en el que no tiene interés alguno particular, sino en virtud de las facultades que le asigna la sección 15 a de la Ley Jones, entre las cuales está la de recaudar y custodiar los fondos públicos, desembolsando

los mismos de acuerdo con la ley, mediante libramientos firmados por el contador y refrendados por el Gobernador. No hay indicación alguna de que al Tesorero de Puerto Rico se haya expedido para el pago de los $10,000 libramiento firmado por el auditor. El demandado lo niega categóricamente.

La acción real y efectivamente se dirige contra el soberano, Pueblo de Puerto Rico, pues el despacho del *injunction* en último término afectaría a El Pueblo de Puerto Rico, impidiendo el cumplimiento del contrato por éste celebrado con Harry S. Hubbard y Emilia Chabert. Este mismo contrato ya ha sido objeto de discusión bajo otro aspecto distinto en la Corte de Distrito de los Estados Unidos para Puerto Rico y resuelto por la Corte de Circuito de Apelaciones del Primer Circuito, en el caso de *Soler, Comisionado de Sanidad* v. *Scoville et al.*, 253 Fed. Rep. 932, en cuya resolución 'la mencionada Corte de Circuito se expresó en los siguientes términos :

"No se alega en la demanda que al elegir el sitio el demandado actuara de mala fe y fuera de sus atribuciones, y a falta de tal alegación deberá presumirse que actuó de buena fe y dentro de sus facultades. En vista de tal situación y considerado el hecho de que la demanda ha sido entablada contra Soler en su capacidad oficial de Comisionado de Sanidad, surge la cuestión de· si en realidad la acción no es contra el soberano, El Pueblo de Puerto Rico. En cuanto a esto no tenemos duda alguna. La acción se ha establecido para que no se perfeccione el contrato en el cual el demandado personalmente no tiene interés y en el que solamente está interesado El Pueblo de Puerto Rico. La acción real y efectivamente es contra el soberano. *In re Ayers*, 123 U. S. 443, 503, 8 Sup. Ct. 164, 31 L. Ed. 216; *Minnesota* v. *Hitchcock*, 185 U. S. 373, 22 Sup. Ct. 650, 46 L. Ed. 954; *Murray* v. *Wilson Distilling Co.*, 213 U. S. 151, 29 Sup. Ct. 458, 53 L. Ed. 742; *Wells* v. *Roper*, 246 U. S. 335, 38 Sup. Ct. 317, 62 L. Ed. 755. Y si dicho soberano no ha prestado su consentimiento para ser demandado, la acción no puede ser sostenida."

La doctrina que dejamos transcrita es aplicable al presente caso porque en él también el Tesorero de Puerto Rico

no tiene interés personal en la acción sino que es El Pueblo de Puerto Rico el único interesado.

Ciertamente que la Ley Jones invocada por el apelante en su sección 2ª. establece que "no se pagará dinero alguno del Tesoro a no ser en virtud de una asignación hecha por ley y mediante libramiento expedido por el funcionario correspondiente de acuerdo con dicha ley;" pero en el presente caso hubo asignación hecha por ley y como hemos dicho antes no se ha hecho alegación alguna de que el Tesorero tratara de pagar los $10,000 sin libramiento expedido por el auditor. En cuanto a que el Comisionado de Sanidad de Puerto Rico ha hecho en su prèsupuesto de gastos una o varias transferencias de fondos por la suma de $9,000 aproximadamente, de una manera ilegal y en contravención abierta con las leyes generales del país, según se alega en la petición de *injunction,* dicha alegación no expresa hecho alguno tendente a demostrar la ilegalidad pretendida y esa transferencia pudo estar autorizada por el Gobernador, usando para ello de la facultad que le confiere la Ley No. 54 de abril 12, 1917, y la otra Ley No. 89 aprobada en diciembre 7, 1917, las cuales establecen que "cuando a juicio del Gobernador los intereses del servicio lo requieran podrá traspasar cantidades asignadas en el presupuesto para un departamento determinado del Gobierno Insular a otras asignaciones para el mismo departamento, y podrá asimismo autorizar transferencias de asignaciones de una subdivisión a otra subdivisión." De todos modos, la petición de *injunction,* según las alegaciones de la demanda tiende a impedir en absoluto el pago del precio de los terrenos de que se trata al vendedor y no a impedir que se haga ese pago con fondos determinados. Esa es la teoría de la demanda. Los casos citados por el apelante en apoyo del recurso, *Ex parte Young,* 209 U. S. 123, y *Greene* v. *Louis & Interurban Railroad Company,* 244 U. S. 490, no son de aplicación al presente, en que se trata de impedir el cumplimiento de un contrato que por más que se califique de supuesto no se hace alegación alguna que origine esa conclusión.

Finalmente, aunque la acción se dirige contra el Tesorero de Puerto Rico sus efectos alcanzan a El Pueblo de Puerto Rico y a Harry S. Hubbard, partes interesadas en ella y que no pueden ser lesionadas en sus derechos sin tener su día en corte. Nos abstenemos de considerar la excepción de falta de capacidad del demandante para establecer la presente acción por estimarlo innecesario.

Es de confirmarse la sentencia apelada.

*Confirmada la resolución apelada.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro, Aldrey y Hutchison.