THE FAJARDO SUGAR COMPANY OF PORTO RICO, demandante y apelante, *v.* MANUEL V. DOMENECH, TESORERO DE PUERTO RICO y FELIPE MARTÍNEZ, COLECTOR DE RENTAS INTERNAS DE NAGUABO, demandados y apelados.

No. 5890.—*Sometido:* Marzo 10, 1933. *Resuelto:* Julio 22, 1933.

*Jaime Sifre Jr.* y *H. Franceschi,* abogados de la apelante; *Hon. Procurador General Charles E. Winter* y *R. Cordovés Arana, Subprocurador,* abogados de los apelados.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Éste es un pleito de *injunction* iniciado por la Fajardo Sugar Co. of Porto Rico, una corporación de esta Isla, para que se dicte sentencia declarando que el Tesorero de Puerto Rico y el Colector de Rentas Internas de Naguabo no tienen derecho a embargar y vender en pública subasta cierta finca hipotecada a favor de la demandante para el cobro de contribuciones que debe el dueño de la misma, Arturo C. Bird & Co., S. en C., y no la finca, dictándose entre tanto una orden preliminar prohibiendo cualquier gestión de venta.

Los hechos, en resumen, son así: Arturo C. Bird & Co., S. en C., es dueña de un predio de terreno de cincuenta cuerdas situado en Naguabo que está hipotecado a la Fajardo Sugar Co. para responder de una deuda de $2,500. Por concepto de propiedad personal, Arturo C. Bird & Co. debe al Tesoro Público contribuciones por valor de $786.97 y para cobrarlas el Colector de Rentas Internas de Naguabo embargó el indicado predio y anunció su venta en pública subasta. Las contribuciones directamente impuestas sobre el predio han sido satisfechas por el acreedor hipotecario.

Y alega la Fajardo Sugar Co. que de venderse la finca en pública subasta para el pago de las indicadas contribuciones, el título que adquiriría el rematante sería uno libre de hipotecas o gravámenes, lesionando de ese modo los derechos preferentes de la demandante. Sostiene, en tal virtud, que el *injunction* es necesario.

Los demandados excepcionaron la demanda porque la corte no tenía jurisdicción para expedir un auto de *injunction* para impedir el cobro de contribuciones y porque la demanda no aducía hechos suficientes. Contestaron aceptando sustancialmente la verdad de los hechos que dejamos resumidos.

El caso fué finalmente resuelto por la corte por sentencia en contra de la demandante. Estimó la corte que la demandante tenía a su alcance el derecho de redimir la propiedad

que le otorga el artículo 348 del Código Político y el de pagar la contribución bajo protesta reclamándola luego de acuerdo con la Ley No. 8 de 1927 (pág. 123), motivos que a su juicio explican la expresa prohibición legal que contiene la ley de interdictos prohibitorios.

No conforme la demandante interpuso el presente recurso de apelación. Señala en su alegato la comisión de dos errores, como sigue:

"1.—La corte inferior cometió error al dictar sentencia declarando sin lugar la demanda, por considerar que no tenía facultad para continuar entendiendo en el caso y expedir el auto de *injunction* solicitado.

"2.—La corte inferior cometió error al declarar sin lugar la demanda, haciendo posible el que los demandados procedan a vender la finca en cobro de contribuciones impuestas a la propiedad personal de su dueña por la vía de apremio, a pesar del derecho hipotecario que sobre dicha finca tiene la demandante y cuyo derecho queda menoscabado y totalmente destruído."

El 23 de abril de 1927 (Leyes de 1927, pág. 167) se aprobó la Ley No. 26 para enmendar la sección 4 de la Ley sobre *injunctions* de 1906, disponiéndose por el Legislador que: "No podrá otorgarse un *injunction* . . . 7. Para impedir la imposición o cobro de cualquier contribución establecida por las leyes de los Estados Unidos o de Puerto Rico."

La enmienda es aplicable a este caso no obstante haberse iniciado en el año 1924 porque su vista en la corte de distrito no tuvo lugar hasta el año de 1931 y la enmienda tiene efecto retroactivo de acuerdo con los principios establecidos por la Corte Suprema de los Estados Unidos en el caso de *Smallwood* v. *Gallardo*, 275 U. S. 56, a saber:

"Sostener un pleito es proseguir, mantener en pie e impedir que se abandone un litigio iniciado.

"No existe un derecho adquirido a un *injunction* contra contribuciones ilegales, y el hecho de presentarse la demanda no crea tal derecho.

"En la ley de marzo 4, 1927, que enmendó la ley para proveer un gobierno civil para Puerto Rico, la disposición de que no podrá

sostenerse en la Corte de Distrito de los Estados Unidos para Puerto Rico pleito alguno con el fin de restringir la tasación o cobro de contribución alguna impuesta por las leyes de Puerto Rico, es aplicable a litigios resueltos en la Corte de Distrito y en la Corte de Circuito de Apelaciones con anterioridad a la ley y con posterioridad a la misma traídos aquí por *certiorari*, y hace necesario que los decretos desestimando las demandas sobre los méritos sean revocados con órdenes de que sean archivados por falta de jurisdicción.''

Y como no hay cuestión sobre el hecho de que la contribución que se cobra era debida por Arturo C. Bird & Co. y fué impuesta por El Pueblo de Puerto Rico, nada tendríamos que agregar para sostener que debe confirmarse la sentencia recurrida.

Está envuelta, sin embargo, una cuestión tan interesante en el litigio y que ha sido tan extensa y cuidadosamente argumentada por la apelante en su alegato que no terminaremos nuestra opinión sin referirnos a ella.

No es éste el caso en que se embarga y vende una finca para el cobro de contribuciones que pesan sobre la propia finca. Es el caso de contribuciones personales debidas al Tesoro Público. ¿Puede entonces embargarse y venderse para el cobro, propiedad inmueble del deudor? Puede, de acuerdo con lo expresamente dispuesto por el artículo 339 del Código Político, como sigue:

''Art. 339. Si los bienes muebles de un contribuyente moroso no fuesen bastantes para el pago de las contribuciones, penalidades y costas que él adeude a El Pueblo de Puerto Rico; o si el tal no tuviese bienes muebles sujetos a embargo y venta, el colector o agente, del distrito en que dicho contribuyente resida, notificará de ello al Tesorero; y en cualquier tiempo después del recibo de dicha notificación, el Tesorero ordenará al colector o agente, embargar y vender cantidad suficiente de los bienes inmuebles de dicho contribuyente moroso para el pago de dichas contribuciones, penalidades y costas.''

¿Qué sucederá si el bien inmueble que se embargue está hipotecado? Volvemos a repetir que no se trata de contribuciones impuestas sobre la propia finca embargada, caso expresamente resuelto por el artículo 315 del Código Político,

sino del embargo de un inmueble para responder de otras contribuciones debidas por su dueño.

La cuestión no aparece expresamente resuelta por la propia Ley de Contribuciones, pero estudiando esa ley en relación con el Código Civil, dijo esta corte desde 1906 por medio de su Juez Presidente Sr. Quiñones, en el caso de *Sucesión Romero* v. *Willoughby,* 10 D.P.R. 71, 77, lo que sigue:

"Ahora bien; atendidos los términos en que ha sido planteada la cuestión que se ventila en estos autos, queda ésta reducida a determinar si la contribución impuesta a la propiedad personal de un contribuyente, constituye o no un verdadero gravamen, una verdadera carga real sobre los bienes inmuebles del mismo contribuyente, que pueda hacerse efectiva sobre ellos, aun después de haber pasado por un título legítimo a la propiedad de un tercero.

"Que los contribuyentes responden con todos sus bienes *indistintamente* al pago de las contribuciones que les hayan sido impuestas, cualquiera que sea su clase, no puede dudarse, en vista de lo que disponen los artículos 336 y 339 del Código Político, según los cuales, una vez hecho el cómputo de todas las contribuciones que adeude el contribuyente moroso, e iniciado contra él expediente de apremio para su cobro, se procederá en primer término contra sus bienes muebles, y si no los tuviere, o no fueren suficientes para cubrir la deuda, se procederá entonces al embargo y venta de los bienes inmuebles del deudor, hasta hacerla efectiva. En esto no cabe pues ninguna duda. Pero una vez salidos los inmuebles del deudor, y pasados a la propiedad de un tercero que los ha adquirido por un título legítimo, ¿continuarán esos bienes afectos al pago de las contribuciones impuestas al deudor, del mismo modo que si no hubiesen salido de su poder?

"Respecto de la contribución impuesta a esos mismos inmuebles, es claro que sí, puesto que con arreglo al artículo 315 del Código Político, la contribución impuesta sobre la propiedad real del contribuyente o sea sobre los bienes inmuebles, constituye un gravamen, lo que. en el lenguaje jurídico significa una verdadera carga real, que pesa sobre los bienes cualquiera que sea su poseedor.

"El artículo 315 del Código Político, tal como ha quedado redactado después de la enmienda introducida en él por la Ley de la Asamblea Legislativa de esta Isla de 10 de marzo de 1904, dice lo siguiente:

" 'Será deber del tasador, al verificar la tasación ó al revisar

la existente, hacer que cada finca, o parcela de propiedad inmueble, conste por separado y asentar el valor en que ha sido tasada cada una, junto con una descripción de la misma y el nombre y dirección postal de su dueño, hasta donde sea posible obtener esos informes. Cuando la propiedad inmueble comprenda tierras y mejoras juntamente, los valores en que hayan sido tasadas las tierras y las mejoras se pondrán por separado. La contribución que se imponga a cada finca o parcela de terreno, e inclusive sobre cualesquiera mejoras que en ella existan, o que puedan posteriormente hacerse en ella, *constituirá el primer gravamen sobre dicha propiedad,* el cual tendrá prelación sobre cualesquiera otros gravámenes sobre la misma, de cualquier clase que fuesen, ya pesen éstos sobre ella antes, ya pesen después, que el gravamen determinado por dicha contribución.'

"En esto el Código Político no hace más que reproducir sustancialmente el precepto de los artículos 168 y 218 de la Ley Hipotecaria vigente en esta Isla; de los cuales el primero concede una hipoteca legal tácita en favor del Estado, de la provincia o de los pueblos, hoy en favor del Pueblo de Puerto Rico, sobre los bienes de los contribuyentes, por el importe de una anualidad vencida y no pagada de los impuestos que graviten sobre ellos; y el segundo, o sea el 218, que el Estado, la provincia o los pueblos tendrán preferencia sobre cualquier otro acreedor para el cobro de una anualidad de los impuestos que graven a los inmuebles; preceptos que reproduce también el artículo 1824 del nuevo Código Civil, conforme en un todo con el 1923 del antiguo, al disponer que con relación a determinados bienes inmuebles y derechos reales del deudor, gozan de preferencia, en primer término, los créditos a favor del Pueblo de Puerto Rico sobre los bienes de los contribuyentes por el importe de la última anualidad, vencida y no pagada, de los impuestos que graviten sobre ellos.

"No cabe, pues, ninguna duda, ni nadie sostiene lo contrario en estos autos, que según el artículo 315 del Código Político y demás disposiciones legales citadas, la contribución impuesta sobre los bienes inmuebles del contribuyente, constituye un verdadero gravamen, una verdadera carga real que pesa sobre ellos cualquiera que sea su poseedor; pero no puede sostenerse otro tanto respecto de la contribución impuesta a la propiedad personal del contribuyente. Sobre ésta, ni el artículo 315 del Código Político, ni ningún otro del mismo Código, le concede el carácter de gravamen o carga real sobre la propiedad inmuebles del contribuyente, que permita a los colectores de Rentas perseguirlos después de haber salido de poder del deudor y

pasado a la propiedad de un tercero; y siendo esto así, es claro que los agentes de rentas no pueden embargarlos para hacer efectiva sobre ellos una responsabilidad que la ley no les impone, por el principio jurídico universalmente reconocido, de que la propiedad se reputa libre mientras no conste que haya sido gravada por la ley o por algún otro título legítimo.

"La condición del Tesoro de Puerto Rico respecto a la contribución impuesta a la propiedad personal del contribuyente, queda, pues, reducida a la de un acreedor meramente personal, sin hipoteca ni derecho de retención alguno sobre los bienes inmuebles del deudor, que le permita perseguirlos después de salidos de su poder, para hacer efectivo sobre ellos el crédito de referencia, aunque si con la preferencia que le concede el artículo 1825 del nuevo Código Civil, concordante con el 1924 del antiguo, sobre los bienes muebles e inmuebles del deudor que no resulten especialmente afectos a otras responsabilidades preferentes, tales como los establecidos sobre determinados bienes inmuebles y derechos reales del deudor a que se refiere el número 1º del artículo 1824 del mismo Código, y los comprendidos en el artículo anterior, o sea el 1823, sobre determinados bienes muebles del deudor, que gozan de absoluta preferencia sobre todos los demás acreedores."

En el caso de Sucesión Romero, supra, ya había salido de la propiedad del contribuyente deudor la finca embargada. Se dijo por eso que el embargo no podía verificarse. En éste la finca es aún del deudor, pero está hipotecada. Puede embargarse y venderse sin perjuicio de los gravámenes preferentes que se hubieran constituído legalmente sobre ella. Tal es la interpretación de la ley que nos parece lógica y que permite reconocer y armonizar todos los intereses envueltos. Está sostenida por la jurisprudencia. De entre los muchos casos que invoca la apelante en su alegato nos limitaremos a citar el de *Bibbins* v. *Clark*, 29 L.R.A. 278, 282. En él la Corte Suprema de Iowa se expresó así:

"Las contribuciones se convierten en gravámenes sólo a virtud de un estatuto, y al crearse no deben ser ampliadas mediante interpretación judicial. Cooley, Taxn. 444; Desty, Taxn. p. 734; Jaffray v. Anderson, 66 Iowa, 719; New England Loan & T. Co. v. Young, 81 Iowa, 738, 10 L. R. A. 478. Ahora bien, nuestro estatuto no dispone expresa o implícitamente que las contribuciones adeudadas so-

bre bienes muebles constituirán un gravamen sobre bienes inmuebles pertenecientes a tal persona, superior a cualquier gravamen existente sobre los mismos. Simplemente dice, en lo que a tales contribuciones se refiere, que ellas constituirán un gravamen sobre cualquier bien inmueble. perteneciente a esa persona o que ella adquiera en lo futuro. Resolver que la mera creación estatutaria de un gravamen sobre bienes inmuebles, sin más, equivale a la creación de un gravamen superior a los gravámenes existentes sobre tal propiedad y que deba interpretarse así, es, a nuestro juicio, no solamente ir más allá de todas las reglas de interpretación, sino que ello es inconsistente con nuestras resoluciones que interpretan otros estatutos en que se emplea una fraseología similar . . . Un examen de nuestros estatutos demuestra que cuando la Legislatura ha tenido la intención de crear un gravamen que debe tener prioridad sobre otros gravámenes ya existentes, la fraseología adecuada ha sido usada para significar tal intención. Véase el código, artículo 1558, y capítulo 100 de las leyes de la décimosexta Asamblea Legislativa. El artículo que tenemos bajo nuestra consideración hace una distinción clara entre gravámenes sobre bienes inmuebles por contribuciones impuestas sobre los mismos y gravámenes sobre bienes inmuebles por contribuciones impuestas sobre bienes muebles. En el primer caso, el gravamen se extiende 'contra toda clase de personas,' y 'es perpetuo ;' en el último caso, simplemente se declara que existirá un gravamen. Ahora bien, en la opinión a que se hace referencia, este contexto del estatuto ha sido tan ampliado por interpretación, que se hace en efecto que el estatuto diga que este gravamen sobre bienes inmuebles por contribuciones personales será superior a cualesquiera otros gravámenes ya existentes sobre tales bienes inmuebles. El estatuto no dice tal cosa, la legislatura no lo ha declarado así, ni tampoco puede llegarse a tal resultado aplicando a esta disposición del estatuto la misma regla de interpretación que se aplica a un lenguaje similar usado en cualquiera otra parte del código. ¿Por qué ha de crearse una regla especial de interpretación para este estatuto específico ? ¿Qué razón existe para que se diga que esta disposición, que simplemente crea un gravamen, signifique más de cuanto dice ? En el caso de Young se dice en la opinión de la mayoría: 'Es principio general de nuestro sistema de contribuciones que cuando se hace que éstas constituyan un gravamen sobre bienes inmuebles, el mismo tiene prelación y es superior a cualesquiera gravámenes hipotecarios o por concepto de sentencias.' En lo atinente a contribuciones impuestas sobre bienes muebles y que a virtud del estatuto

constituyen un gravamen sobre bienes inmuebles, sin decirse nada sobre prelación, la aserción que precede, a nuestro juicio, no tiene apoyo en las autoridades. Tratando esta cuestión, la Corte Suprema de South Dakota en el reciente caso de Miller v. Anderson, 1 S. Dakota 539, 11 L. R. A. 317, dijo: 'Mas, leyendo íntegramente el artículo 1612, es inexplicable para nosotros por qué, si fué la intención de la legislatura colocar en el mismo nivel las contribuciones sobre bienes inmuebles y las impuestas sobre bienes muebles y hacer que ambas constituyan gravámenes de igual extensión y categoría, no debieron haber usado términos que por lo menos sugirieran tal intención. Si a tenor de un principio general, conforme se dice en la opinión de la mayoría de la Corte Suprema de Iowa a que más adelante se hace referencia, el gravamen declarado era necesariamente uno de primera clase, ¿por qué no había tanta seguridad en descansar en tal principio cuando se trataba de contribuciones sobre bienes inmuebles como cuando se trataba de contribuciones sobre bienes muebles? En cuanto a las primeras, se tuvo cuidado en decir que el gravamen se extendía a toda clase de personas; fijando así definitivamente su categoría de gravamen; y luego, en contraposición directa con las contribuciones sobre bienes muebles, se provee que éstas constituirán simplemente un gravamen. Tomando el significado y la intención de esta ley de su fraseología (y ésta es primariamente una regla de interpretación), llegamos a la conclusión que aquella parte del ameritado artículo 1612 que se refiere a contribuciones sobre bienes muebles crea un gravamen por las mismas en favor del acreedor de la contribución desde el momento en que procede su cobro, sobre cualesquiera bienes inmuebles pertenecientes entonces o adquiridos posteriormente por el deudor de la contribución, sujeto, sin embargo, al igual que cuando se trata de otros gravámenes creados por ley, a los estatutos generales que rigen la cuestión de prelación o preferencia.' Una mayoría de la corte, tal cual está ahora constituída, está plenamente de acuerdo con el criterio expresado por el Juez Asociado Sr. Granger en su opinión disidente en el caso de Young. El juez que suscribe ha hecho una investigación cuidadosa de esta cuestión y está convencido de que la regla sentada por la opinión de la mayoría en el caso de Young está equivocada, y de que con ella la letra y el espíritu del estatuto se extienden injustificadamente mediante interpretación judicial, con gran detrimento de los tenedores de otros gravámenes, y que se da un efecto que nunca tuvo en mente la legislatura a aquella parte del estatuto. Cuando el estatuto provee respecto a que las contribuciones sobre bienes muebles

constituirán un gravamen sobre bienes inmuebles es que habrá un gravamen y deberá resolverse que como tal cae dentro de la regla general de que su prelación ha de determinarse a partir del momento en que surgió el gravamen. En vista de la extensísima discusión de esta cuestión en el caso de Young, huelga que nos extendamos más. Habiendo surgido el gravamen hipotecario del demandante sobre los solares con anterioridad al momento en que las contribuciones sobre los bienes muebles se constituyeron en un gravamen sobre los mismos, debe resolverse que tal gravamen es superior al gravamen por concepto de contribuciones. El caso de New England Loan & T. Co. v. Young, a que se ha hecho referencia, en tanto en cuanto sostiene que las contribuciones impuestas sobre bienes muebles y que constituyen un gravamen sobre bienes inmuebles, son una carga anterior y superior a los gravámenes existentes sobre los mismos, debe ser, y por la presente es, revocado.''

Insiste la apelante en que la dificultad estriba en que la venta de la finca en pública subasta para el cobro de contribuciones se hace de acuerdo con la ley libre de gravámenes, con lo cual quedaría necesariamente perjudicada su hipoteca. Cita el caso de *Márquez* v. *Registrador,* 11 D.P.R. 268.

El caso de Márquez, supra, se refiere a la venta de una finca para el cobro de las contribuciones que pesaban sobre la finca misma. Aquí no se sabe aún qué haría el colector al vender. La misma parte apelada dice en su alegato: ''No discutimos, antes por el contrario, aceptamos que nuestro estatuto no crea un *lien* por contribuciones personales sobre la propiedad inmueble del contribuyente.''

Pero aunque el colector expidiera su certificado haciendo constar que la finca vendida lo era libre de gravámenes, si en verdad existían gravámenes anteriores debidamente constituídos que de acuerdo con la ley eran preferentes y no podían ser destruídos, el registrador al inscribir el certificado podría negarse a cancelarlos, o la persona a cuyo favor estuvieran constituídos podría hacerlos valer no obstante el certificado.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Wolf disintió.*

---

* NOTA: Véase el prefacio.