Hortensia Méndez Vda. de Escalona, demandante y apelante, v. Rafael Buscaglia, Tesorero de Puerto Rico, demandado y apelado.

Núm. 8865.—*Sometido:* Noviembre 14, 1944. *Resuelto:* Marzo 23, 1945.

*Manuel Benítez Flores,* abogado de la apelante; *Hon. Procurador General Interino Jesús A. González* y *José N. Rivera Barreras, Procurador Auxiliar,* abogados del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

La apelante demandó al Tesorero de Puerto Rico en el presente caso, alegando que en 1938 el Colector de Rentas Internas de San Juan embargó cierta propiedad inmueble inscrita a nombre de Apelio Felices Portilla, para el cobro de contribuciones ascendentes a $1,606.97 que adeudaba una sociedad de la cual Felices era el socio gestor; que la demandante estuvo presente en la subasta pública de dichos bienes celebrada el 27 de octubre de 1938 y adquirió la propiedad por la suma de $1,632.98, la que entregó al Colector; que eso no obstante la demandante no ha podido tomar posesión de los bienes ni ha adquirido título sobre los mismos, debido a que el Registrador de la Propiedad se ha negado a registrar dicho título a su nombre libre de cargas, por el fundamento de que con anterioridad a la subasta se había inscrito una hipoteca sobre la propiedad, hipoteca que seguía subsistente aún después de verificarse la subasta, no siendo las contribuciones un gravamen preferente a la hipoteca; que en el certificado expedido por el Colector se hacía constar que "si el derecho de redención que determina la ley no se ejercía en el término de un año, el certificado de venta constituiría título absoluto de los bienes vendidos, una vez fueran inscritos en el Registro de la Propiedad, quedando los mismos libres de toda hipoteca, carga o cualquier otro gravamen que sobre ellos pesaren"; que esto no era cierto, debido a que el gravamen hipotecario que existía antes de verificarse la venta siguió subsistente después de verificada la venta en pública subasta, porque las contribuciones envueltas no eran contribuciones sobre la propiedad vendida y por tanto no tenían prioridad sobre la hipoteca ya constituída sobre la misma; que ni en los edictos, ni en la subasta, ni en ningún otro momento el Colector le advirtió a la demandante que dicha hipoteca era preferente, sino que por el contrario el certificado del Colector la indujo a creer,

y ella creyó de buena fe, que al momento de la compra, la propiedad estaba libre de gravámenes; que el Tesorero se ha negado a devolverle la suma pagada por los bienes; y que la venta y el contrato de venta son nulos y sin valor alguno; que el Tesorero está reteniendo indebidamente el precio de venta y debe ordenársele que lo reembolse a la demandante. La súplica consistió en (a) que se anule la venta; (b) que se rescinda el contrato de venta; y (c) que se ordene al Tesorero reembolsar a la demandante la suma de $1,632.98.

El Tesorero solicitó la desestimación de la demanda por no aducir hechos suficientes para constituir una causa de acción y porque la corte carecía de jurisdicción sobre la materia y sobre el demandado. Esta moción no se argumentó. Por el contrario, la corte de distrito celebró el juicio en los méritos después de radicarse la contestación. Sin embargo, la corte no consideró la prueba aducida, sino que dictó sentencia a favor del demandado por el fundamento de que la demanda no aducía una causa de acción. La demandante ha apelado de dicha sentencia.

Si bien la demandante no admite que la corte inferior estaba correcta técnicamente al resolver que la demanda no exponía una causa de acción, admite—en verdad lo alega—que habiéndose inscrito la hipoteca antes de la venta, bajo las circunstancias de este caso—una subasta de bienes de un individuo por contribuciones atrasadas sobre bienes muebles de una sociedad de la cual el individuo era el socio gestor—la hipoteca era preferente al título adquirido en la subasta (*Fajardo Sugar Co. of Puerto Rico* v. *Domenech,* 45 D.P.R. 553, 555–62; artículo 315, Código Político; sección 1 de la Ley núm. 14, Leyes de Puerto Rico, 1933 (pág. 77); artículos 292, 339, Código Político; *Gregory* v. *Tesorero,* 24 D.P.R. 94).(¹) Su demanda se basa únicamente en el lenguaje

(¹)Según veremos más adelante, en este caso existen ciertas peculiaridades, una de las cuales es que la hipoteca, que sobrepasaba el valor de la casa, se inscribió el mismo día en que se anotó en el Registro el embargo por las con-

empleado en el certificado de venta, y en haber dejado el Colector de advertirle de la hipoteca existente. Pero es elemental que *caveat emptor* se aplica a las ventas en cobro de contribuciones; el comprador adquiere la propiedad tal como la encuentra. La ley no impone la obligación, hasta donde sepamos, de que el Gobierno esté obligado a certificar el estado del título a un probable comprador. Y el certificado del Colector estaba redactado en la forma ordinaria con referencia al período de redención; ninguna garantía de título puede razonablemente inferirse del mismo. En verdad, expresamente llamaba la atención hacia el hecho de que se necesitaba la inscripción para conferir a la demandante un título válido completamente limpio. Dijimos en el caso de *Fajardo Sugar Co.* que bajo las circunstancias aquí concurrentes la propiedad (pág. 559) ''Puede embargarse y venderse sin perjuicio de los gravámenes preferentes que se hubieran constituído legalmente sobre ella; y que (pág. 562) ''aunque el colector expidiera su certificado haciendo constar que la finca vendida lo era libre de gravámenes, si en verdad existían gravámenes anteriores debidamente constituídos que de acuerdo con la ley eran preferentes y no podían ser destruídos, el registrador al inscribir el certificado podría negarse a cancelarlos, o la persona a cuyo favor estuvieran constituídos podría hacerlos valer no obstante el certificado''. Véanse *Marrero* v. *Registrador,* 48 D.P.R. 16; *Salgado* v. *Registrador,* 26 D.P.R. 172; 3 Cooley *on Taxation,* 4ta. ed. Sec. 1497, pág. 2945; 4 Cooley, *supra,* Sec. 1553, pág. 3045; 31 L.R.A. (N. S.) 1141; *Bell* v. *Los Angeles County,* 266 Pac. 291, (Calif., 1928).

■ Sin embargo, la dificultad aquí estriba en que se celebró un juicio en los méritos. Y en el juicio se presentó considerable testimonio por parte de la demandante, la mayor parte del cual no fué impugnado por el demandado, en

tribuciones adeudadas. Sin embargo la demandante no levantó cuestión alguna en cuanto a la validez de la hipoteca y no pende ante nos ninguna cuestión en relación con la misma.

cuanto a ·que la demandante había comprado originalmente una propiedad diferente en la subasta pública celebrada el 27 de octubre de 1938; que el Tesorero anterior entonces la mandó a buscar y le pidió que le hiciera un favor y que le permitiera cancelar la venta toda vez que la propiedad pertenecía a su médico particular y que había sido vendida mientras el Tesorero se encontraba en los Estados Unidos Continentales;[2] que ella accedió a hacer esto al prometerle el Tesorero que se le devolvería el precio de venta más los intereses; que unos días más tarde el dinero fué enviado al Colector para que se lo entregara y que cuando éste se disponía a entregárselo le sugirió que invirtiera su dinero en la propiedad aquí envuelta, que también estaba señalada para venderse el 27 de octubre por contribuciones adeudadas; que.la transacción de venta se consumó allí y entonces antedatando los documentos pertinentes con el fin de hacer aparecer que la venta de los bienes aquí envueltos se había efectuado en verdad el 27 de octubre; [3] que cuando se descubrió posteriormente que existía una hipoteca preferente sobre la propiedad, el Tesorero convino en que se había cometido una injusticia con ella y solicitó del Procurador General una opinión en cuanto a si tenía poder para anular la venta y devolver el dinero a la viuda;[4] que el Procurador General le contestó en la negativa, radicando entonces la demandante el presente pleito; que se aprobó por unanimidad un proyecto en la Legislatura disponiendo la devo-

---

[2] De ser ciertos estos hechos, es difícil ver por qué el Tesorero hizo esto, a no ser que deseara eliminar el récord de la subasta, toda vez que el dueño pudo haberla redimido dentro de un año.

[3] Descansando principalmente en la presunción de que las fechas de los documentos hablan por sí mismas, el demandado niega este hecho específico.

[4] Es interesante hacer constar que cuando se trataba de limpiar la propiedad y el nombre de su médico particular, el Tesorero anterior no solicitó la opinión del Procurador General. Sencillamente procedió, sin más, a cancelar la venta en pública subasta perfectamente válida de la primera propiedad a favor de la demandante y desembolsarle el dinero con intereses—probablemente pagado por el médico y no por el Tesorero, aún cuando el récord no está claro sobre este último punto.

lución a la demandante del precio de venta, pero que·el Gobernador lo vedó al aconsejárselo el Procurador General, ya que el presente pleito estaba pendiente y que el Gobierno lo ganaría.

La prueba aducida durante el juicio no fué, desde luego, conforme a la demanda. Sin embargo, habiéndola admitido, la corte inferior muy bien pudo llegar a considerar las alegaciones enmendadas para conformarse a la prueba (Véanse *Viñas v. Hernández,* 60 D.P.R. 276;* *García et al v. Martínez, Per Curiam,* resuelto en febrero 23, 1945; Regla 15(*b*), Reglas de Enjuiciamiento Civil). Y podría argüirse, si bien la corte de distrito no lo hizo, que debemos pesar la evidencia y decidir el caso por la prueba más bien que por las alegaciones técnicas. Sin embargo, nunca llegaremos a ese punto, toda vez que una invencible dificultad nos impide considerar este caso en sus méritos.

▮▮▮ El demandado alegó falta de jurisdicción. La corte de distrito resolvió que era innecesario considerar esta defensa. La misma ha sido renovada ante esta corte. El Pueblo de Puerto Rico no puede ser demandado sin su consentimiento. (*Bonet v. Yabucoa Sugar Co.,* 306 U. S. 505; *Porto Rico v. Rosaly,* 227 U. S. 270). El demandado afirma que en substancia este es un pleito contra El Pueblo de Puerto Rico. La demandante no argumenta esta cuestión en su alegato.

El demandado alega que no puede encontrarse el consentimiento al presente caso en la Ley núm. 76, Leyes de Puerto Rico, 1916 (pág. 155), según quedó enmendada por la Ley núm. 11 de 1928 (pág. 131), toda vez que éste no es un pleito de daños o de reivindicación de propiedad. En apoyo de su posición el demandado cita *Miguel v. Tesorero de Puerto Rico,* 28 D.P.R. 753; *Martínez v. El Pueblo de Puerto Rico,* 19 D.P.R. 1005; y *Rubert Hnos. v. El Pueblo et. al.,* 19 D.P.R. 919.

En el caso de *Miguel* dijimos que la determinación de si el pleito es contra el estado depende de (pág. 755) "la naturaleza del pleito o del remedio solicitado". Allí el demandante solicitó un *injunction* para prohibir al Tesorero que pagara el precio de venta de un solar sobre el que se construiría un hospital. Se alegaba que el precio de venta era excesivo y que ya se había construído el hospital en terrenos donados al Gobierno. Este Tribunal resolvió que el Tesorero no tenía interés individual en el pleito, y que el Gobierno de Puerto Rico era la única parte realmente interesada. Por tanto resolvimos que procedía la desestimación del caso por falta de jurisdicción. Citamos y aplicamos el lenguaje empleado por nuestra Corte de Circuito al considerar otro aspecto del mismo caso como sigue: "No se alega en la demanda que al elegir el sitio el demandado actuara de mala fe y fuera de sus atribuciones, y a falta de tal alegación deberá presumirse que actuó de buena fe y dentro de sus facultades. En vista de tal situación y considerado el hecho de que la demanda ha sido entablada contra Soler en su capacidad oficial de Comisionado de Sanidad, surge la cuestión de si en realidad la acción no es contra el soberano, El Pueblo de Puerto Rico. En cuanto a esto no tenemos duda alguna. La acción se ha establecido para que no se perfeccione el contrato en el cual el demandado personalmente no tiene interés y en el que solamente está interesado El Pueblo de Puerto Rico. La acción real y efectivamente es contra el soberano. (Casos). Y si dicho soberano no ha prestado su consentimiento para ser demandado, la acción no puede ser sostenida". (*Soler* v. *Scoville, et al.,* 253 Fed. 932, 934 (C.C.A. 1st, 1918). Véase *Fajardo Sugar Co. of Puerto Rico* v. *Domenech,* supra, págs. 554–55; *Ford Motor Co.* v. *Department of Treasury,* 323 U. S. 459, resuelto el 8 de enero de 1945.

El verdadero propósito de este caso es obtener de El Pueblo de Puerto Rico el pago de $1,606.97 de la Tesorería

Insular. De la demanda original se desprende esto con claridad meridiana. Y aún si considerásemos la demanda enmendada para conformarla a la prueba, las imputaciones de alegada conducta impropia de varios funcionarios anteriores del Gobierno no pueden por sí solas crear un derecho para demandar al Gobierno por una suma de dinero aún si el Gobierno se ha beneficiado económicamente debido a tal conducta. De ser ciertos dichos hechos, esto sería impropio; pero el remedio para ello no está en nuestras manos. Tampoco tenemos que decir en este caso si la demandante tiene o no algún remedio contra los antiguos funcionarios a quienes le imputa dicha conducta impropia. Sólo resolvemos que la demandante no puede demandar al Gobierno en cobro del dinero en cuestión por no haberse concedido el consentimiento para ello. Y la más elocuente prueba de que éste es en substancia un pleito contra el Gobierno la proporciona el hecho de que el actual Tesorero, quien juró su cargo después de ocurridos todos los hechos aquí envueltos, es el demandado; y a él se le pide que devuelva a la demandante el dinero de los fondos de Tesorería, no de su propio peculio.(5)

En virtud de estas consideraciones, carecemos de poder para actuar en este caso. El remedio para la demandante, si alguno tiene, debe venir de otra rama del Gobierno. Una

---

(5)El caso de *Board of National Missions* v. *Robles*, 58 D.P.R. 222, se distingue por sus hechos. La propiedad de la demandante en dicho caso, dedicada a actividades religiosas, estaba exenta de contribuciones. No obstante fué vendida a un tal Robles por contribuciones adeudadas. Este Tribunal revocó una sentencia declarando con lugar una excepción previa en un pleito sobre nulidad de la subasta. Allí el propio contribuyente protestaba contra una subasta por ser ésta nula. Además, el Tesorero pudo no ser una parte necesaria en un pleito radicado por el demandante contra el supuesto comprador en una subasta para limpiar el título de su propiedad que estaba exenta de contribuciones. En dicho caso no se discutió el punto aquí envuelto. En este caso el contribuyente se admite estaba atrasado en el pago y la propiedad podía venderse válidamente en la subasta pública, si bien el comprador adquirió el título sujeto a una hipoteca preferente. La compradora, reclamando a base de la conducta impropia de ciertos funcionarios gubernamentales anteriores, radica pleito ahora para que se le reembolse su dinero de los fondos de la Tesorería. Eso obviamente es un pleito contra el Gobierno y no puede prosperar en ausencia del consentimiento del Gobierno para que se entable el mismo.

vez convenció a la Legislatura de que una grave injusticia se había cometido con ella. Quizás pueda convencerla otra vez.

*La sentencia de la corte de distrito será confirmada.*